```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**JAMES R. DOTSON,**

    **Plaintiff,**

  vs.                                  Civil Action 2:13-cv-1139
                                          Judge Sargus
                                          Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**


## REPORT AND RECOMMENDATION

**I.    Background**

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is now before the Court on *Plaintiff's Statement of Errors* ("*Statement of Errors*"), Doc. No. 13, the Commissioner's *Opposition to Plaintiff's Statement of Errors*, Doc. No. 20, and *Plaintiff's Reply*. Doc. No. 21.

    Plaintiff James R. Dotson filed his applications for benefits on December 10, 2010, alleging that he has been disabled since May 1, 2005. *PAGEID* 73, 216-20. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    An administrative hearing was held on May 29, 2012, at which plaintiff, represented by counsel, appeared and testified, as did

Ronald Kendrick, M.D., who testified as a medical expert, and Carl Hartung, who testified as a vocational expert. *PAGEID* 73, 89. In a decision dated July 24, 2012, the administrative law judge concluded that plaintiff was not disabled from May 1, 2005, the alleged disability onset date, through the date of the administrative decision. *PAGEID* 83. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 17, 2013. *PAGEID* 52-54.

Plaintiff was 42 years of age on the date of the administrative law judge's decision. *See PAGEID* 83, 216. He has at a limited education, is able to communicate in English, and has past relevant work as a truck driver and in building maintenance and repair. *PAGEID* 81. Plaintiff was last insured for disability insurance purposes on March 31, 2010. *PAGEID* 75. He has not engaged in substantial gainful activity since May 1, 2005, his alleged date of onset of disability. *Id*.

## II. Evidence of Record[1]

Plaintiff testified at the administrative hearing that he worked as a truck driver from 2000 to 2005, but left after he tore his "left shoulder rout." *PAGEID* 96-98. Plaintiff underwent three shoulder

---

[1] The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors*. Plaintiff's *Statement of Errors* discusses the testimony of plaintiff, the medical expert testimony, and the vocational expert at the administrative hearing, but does not discuss any other medical evidence. According to the *Statement of Errors*, "[t]he issues raised . . . are issues of law not reliant upon the medical evidence of record." *Statement of Errors*, p. 7.

2

surgeries and physical therapy without improvement in his shoulder. *PAGEID* 98-99.  He now receives shots for pain management.  *PAGEID* 101.

Plaintiff last worked as a temporary maintenance worker from 2006 until 2008, but he left that job because he could not perform the lifting requirements.  *PAGEID* 95-96.

Plaintiff testified that he cannot lift with his right hand and that he has difficulty with his collarbone if he uses his left hand to pick up an object.  *PAGEID* 102.  He can pick up his wallet with his left hand and four or five pounds with his right.  *PAGEID* 103. Plaintiff has difficulty sleeping because of numbness in his hands and a knot in his back and neck.  *PAGEID* 103-04.  Plaintiff experiences numbness in his fingers three to four times a week.  *PAGEID* 107. Plaintiff has difficulty using his arms to reach; he cannot raise anything above his head.  *PAGEID* 107.  He relies on his wife to help him get out of the bathtub.  *Id*.  Plaintiff does not go grocery shopping by himself; he does not perform household chores because of problems with his arms.  *PAGEID* 111.

Plaintiff also testified that he has difficulty walking because of swelling in his calf.  *PAGEID* 106.  He uses a cane to walk "every other day or every day," depending on how much his leg is bothering him.  *PAGEID* 109.  He can sit for 35 to 45 minutes and can stand for 15 to 20 minutes at a time.  *PAGEID* 111.

Plaintiff testified that he has suffered from bipolar disorder for his entire life; he has taken medication for the condition for one

3

year.  *PAGEID* 110.  He is depressed and has crying spells and mood swings; medication helps "so-so."  *Id*.  Plaintiff's blood pressure is uncontrolled, despite medication.  *PAGEID* 107-08.

The medical expert testified that plaintiff's impairments neither meet nor equal any listing.  *PAGEID* 117.  According to the medical expert, plaintiff could perform sedentary work.  *Id*.  Specifically, plaintiff could stand or walk for 30 minutes at a time for two hours, could sit for one hour at a time for six hours, and could lift 10 pounds occasionally and five pounds frequently.  *PAGEID* 117-18. Plaintiff could occasionally bend, stoop, kneel, and crawl, and could frequently use his upper extremities for all functions except overhead reaching, which he could perform occasionally.  *PAGEID* 118.  Plaintiff could grasp, finger, push, pull, and reach in all directions frequently, but only occasionally overhead.  *Id*.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge.  *PAGEID* 124-25.  According to the vocational expert, such an individual could not perform plaintiff's past relevant work, but could perform such jobs as inspector and office machine operator.  *PAGEID* 125-28.

**III. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of "status-post subacromial decompression, bilateral shoulders; diabetes mellitus; lumbar degenerative disc

4

disease; mild carpel tunnel syndrome; coronary artery disease, not severe; and history of opiate abuse." *PAGEID* 75-76.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  Specifically, the claimant can lift up to 10 pounds occasionally and five pounds frequently.  He can sit for one hour at a time for a total of six hours during an eight-hour workday.  He can stand and/or walk for 30 minutes at a time for a total of two hours during an eight-hour workday.  He can occasionally bend, stoop, kneel, and crawl.  He can frequently, but not continuously grasp, handle and manipulate items and reach forward and to the side.  He can occasionally reach overhead.

*PAGEID* 77.  Although this RFC precludes the performance of plaintiff's past relevant work as a truck driver and in building maintenance and repair, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as inspector and office machine operator.  *PAGEID* 81-82.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from May 1, 2005, through the date of the administrative decision.  *PAGEID* 83.

**IV. Discussion**

     Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings

of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff challenges the administrative law judge's credibility determination. *Statement of Errors*, pp. 8-11. Plaintiff specifically argues that the administrative law judge's credibility determination was "conclusory," failed to discuss plaintiff's activities of daily living, failed to

6

comply with SSR 96-7p, and relied too heavily on objective medical evidence.  *Id.*; *Plaintiff's Reply*, p. 1.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).  *See also* 42 U.S.C. § 423(d)(5)(A).  In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).  If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint.  *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following factors:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

7

> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996).  The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)).  However, credibility determinations must be clearly explained.  *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge evaluated plaintiff's credibility as follows:

Under the Social Security Act, a "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" of 12 months or more. Sections 223(d)(1)(A) and 1614(a)(3)(A) of the Act. Impairments must result from "anatomical, physical, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." Sections 223(d)(3) and 1614(a)(3)(C) of the Act. Thus, statements about pain or other symptoms will not alone establish disability. There must be medical signs and laboratory findings that show the claimant has medically determinable impairments that could reasonably be expected to produce the alleged symptoms and that, when considered with all the other evidence, leads to a conclusion of disability. These include the following: the claimant's daily activities; the nature of the symptoms; precipitating and aggravating factors; the medications and any side effects; and other treatment followed and measures used to relieve the symptoms. *See* 20 CFR 404.1529 and 416.929 and Social Security Ruling 96-7p. Where examination shows objective medical evidence of an underlying medical condition, it must be determined whether: (1) the objective evidence confirms the severity of the alleged pain arising from the condition; or (2) the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Duncan v. Secretary*, 801 F.2d 847, 852-53 (6th Cir. 1986); *McCormick v. Secretary*, 861 F.2d 998, 1002-03 (6th Cir. 1988). My interpretation of these guidelines is that the factors must be carefully considered, but that the claimant's allegations of pain and functional loss do not have to be accepted at face value in every case. Any other interpretation would mean that the filing of the application and related procedural papers would be determinative in nearly every case.

With respect to the nature of the claimant's symptoms, precipitating and aggravating factors, the medications taken and any side-effects, and other measures used to relieve the symptoms, the claimant testified that he stopped working for the trucking company in 2005 because he injured his left shoulder and had the first surgery on his left shoulder in 2005. He testified that he has had two more surgeries on his left shoulder and one surgery on his right shoulder, none of which have helped. He can lift four to five pounds with his right arm and less than five pounds with his left. He has difficulty reaching straight out, side to side and over his head. He testified that his hands go numb for hours, three to four times a week. He also has back pain daily and has used a cane for the past one and one-half to two years as needed. He has to get up and stretch after sitting 35-45 minutes and can stand 15-20 minutes.

Ronald Kendrick, M.D., the medical expert at the hearing, testified that the claimant's medically determinable impairments included a history of left shoulder surgery for a rotator cuff tear and repeated procedure on his right shoulder; diabetes mellitus; history of a remote myocardial infarction without placement of a cardiac stent; carpal tunnel syndrome; history of substance abuse; and EMG evidence of chronic right S1 radiculopathy. Dr. Kendrick testified that an impingement syndrome would cause some pain in reaching overhead, but no pain in reaching to the front or to the side on a frequent basis.

The claimant appears to have underlying medically determinable impairments that could reasonably cause some symptomatology. However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity as set forth above or to preclude all work activity on a continuing and regular basis. In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant. The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the range of work described above. Rather, the factors set forth in 20 CFR 404.1529(c) and 416.929(c) support the residual functional capacity that has been found.

The record supports that the claimant has pain and limitations of both upper extremities. The objective medical evidence of record documents findings consistent with diagnoses of bilateral shoulder AC joint arthritis and impingement syndrome with subsequent surgical repair (Exhibits 2F, 3F, 4F and 8F). However, the objective medical records in evidence also document findings of left shoulder muscles well maintained (Exhibit 3F, p.35); right shoulder improving with less pain (Exhibit 3F, p.48); normal reflexes in arms and normal neurosensory exam of upper extremities (Exhibit 2F, p.9); upper extremities full range of motion, motor 5/5, sensory 2/2, reflexes 2/4 and tone grossly intact (Exhibit 26F); and attending physician report that the claimant's left shoulder was doing well (Exhibit 23F, pp.2-4).

In addition to the general lack of objective evidence to support his subjective complaints, there are other considerations that weigh against the claimant's overall credibility. For example:

- The claimant made no mention of back pain when he filed for benefits in December 2010 (Exhibit 3E).

- The claimant reported that he had surgery on his left shoulder at Berger Hospital in 2005 (Exhibit 3E). However, there is a significant gap in the medical record, from the claimant's alleged disability onset date of May 1, 2005 through June 2007, and another significant gap from July 2007 (Exhibit 1F) through September 2009 (Exhibit 3F, pp.34-35), indicating a lack of treatment during a period that the claimant alleges his condition was disabling.

- The claimant has alleged that he stopped working as a truck driver because of injuries to his shoulders and limited ability to lift. However, the record indicates that the claimant lost his license. He was caught twice driving under suspension (Exhibit 1F, p.6) and was under house arrest in July 2007, for violating driving privileges three times (Exhibit 1F, p.48). In August 2011, the claimant reported that he lost his license for driving under suspension, and was on suspension for unpaid speeding ticket. He reported that he kept driving because he needed the income and was stopped several more times (Exhibit 9F).

- The claimant worked for temporary agencies after his alleged disability onset date through 2008 (Exhibit 3E).

10

> Although the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> The record also contains inconsistent and exaggerated statements that further detract from the claimant's overall credibility. For example:
>
> In contrast to the claimant's testimony that he cannot sit for longer than 35-45 minutes before he has to change position, Dr. Yamour reported the claimant's statement that he has "severe pain and when he sits it goes away, but if he gets up it starts hurting." The claimant also reported that his medicines control his pain (Exhibit 13F, p.3).
>
> The claimant was able to attend closely and fully to the hearing proceedings and respond appropriately to questions, without any observable interference from his alleged mental or physical symptoms.
>
> Although the inconsistent/exaggerated information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless, such statements suggest that the information provided by the claimant generally may not be entirely reliable.
>
> In summary, the location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated in the above residual functional capacity. The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the range of work described above.
>
> Considering the medical evidence and opinions discussed above, as well as the claimant's activities, the undersigned finds that the claimant's subjective complaints and alleged limitations are not fully persuasive, and that he retains the capacity to perform work activities with the limitations set forth above.

*PAGEID* 78-81.

    Plaintiff's arguments to the contrary notwithstanding, there is nothing "conclusory" about the administrative law judge's credibility assessment. The administrative law judge noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of her credibility

11

determination. It was not improper for the administrative law judge to evaluate the objective medical evidence in evaluating plaintiff's credibility, *see* SSR 96-7, 1996 WL 374186 (July 2, 1996)*,* and the administrative law judge specifically addressed plaintiff's activities of daily living. The analysis and credibility determination of the administrative law judge enjoy substantial support in the record. The Court will not – and indeed may not - revisit that credibility determination. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Plaintiff next argues that the administrative law judge erred in finding that plaintiff did not have an impairment or combination of impairments that meet or medically equal a listed impairment. *Statement of Errors*, pp. 11-13.

"At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). The claimant bears the burden of proof at step three to establish that the criteria of a listing are met or that his impairment is the medical equivalent of a listing. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). An administrative law judge's evaluation of the listings must

12

contain sufficient analysis to allow for meaningful judicial review. *Reynolds*, 424 F. App'x at 415-16.

In the case presently before the Court, the administrative law judge found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1." *PAGEID* 77. In making this determination, the administrative law judge expressly considered whether plaintiff's "impairments, whether considered alone or in combination," meet or equal the criteria in any section of Listing 1.00 for musculoskeletal impairments:

> The claimant's impairments, whether considered alone or in combination, do not meet or equal the criteria in any section of Listing 1.00 for musculoskeletal impairments. The requirements of section 1.02, which deals with major dysfunction of a joint(s), are not met or equaled. The claimant does not have major dysfunction of any joint resulting in inability to ambulate effectively or resulting in inability to perform fine and gross movements effectively. The requirements of section 1.04, which deals with disorders of the spine, are not met or equaled. The objective record does not document evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; or spinal arachnoiditis; or lumbar stenosis resulting in pseudoclaudication.

*Id*. Plaintiff argues that the administrative law judge "did not consider whether the [non-severe and] unmentioned severe impairments met or equaled a listing or, more importantly, whether the combination of all or some of the impairments met or equaled a listing." *Statement of Errors*, p. 12. Citing to *Reynolds,* 424 F. App'x 411,

13

plaintiff argues that the administrative law judge's failure to analyze plaintiff's impairments in relation to the listings is reversible error. *Statement of Errors*, p. 12. Plaintiff's arguments are not well taken.

In *Reynolds*, the administrative law judge erred in failing to analyze the plaintiff's condition in relation to a listing that the administrative law judge expressly stated was at issue and for which "it [was] possible that the evidence [that plaintiff] put forth could meet." *Reynolds*, 424 F. App'x at 416. The administrative decision in *Reynolds* was deficient because the administrative law judge did not "actually evaluate the evidence . . . and give an explained conclusion" sufficient "to facilitate meaningful judicial review." *Id*. This case is distinguishable from *Reynolds* because the administrative law judge evaluated the listings for musculoskeletal impairments, and plaintiff has not identified any other listing that should have been considered by the administrative law judge but was not. Moreover, plaintiff has not cited any evidence to suggest that his condition satisfies the requirements of a listing. As to plaintiff's remaining argument, the administrative law judge expressly stated that she considered the combination of plaintiff's impairments in considering the listings for musculoskeletal impairments. *PAGEID* 77. Although plaintiff argues that the administrative law judge should have more thoroughly explained her evaluation of every severe and non-severe impairment in making this determination, the Court

14

finds no error in this regard. This is especially true where, as here, plaintiff has not identified any evidence even suggesting that the administrative law judge's evaluation was deficient or otherwise unsupported by substantial evidence.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of*

15

*Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


October 30, 2014  	*s/Norah McCann King*
	Norah M<sup>c</sup>Cann King
	United States Magistrate Judge